IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


AMY F.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 20-cv-01838-HZ

OPINION & ORDER

Caitlin S. Laumaker
George J. Wall
Law Offices of George J. Wall
825 NE 20th Ave, Suite 330
Portland, OR 97232

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Sarah L. Martin
Sarah Elizabeth Moum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Amy F. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on May 21, 2018, alleging an onset date of March 5, 2013. Tr.167.[2] Plaintiff's date last insured ("DLI") is March 31, 2018. Her application was denied initially and on reconsideration. Tr. 206, 212.

On March 5, 202, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 106. On April 7, 2020, the ALJ found Plaintiff not disabled. Tr. 29. The Appeals Council denied review. Tr. 1–6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on left parietal craniotomy for resection of meningoma CVA, cognitive disorder, fibromyalgia, cervical DDD, migraines, anxiety, depression, mennieres disease, ehellers danlos syndrome, and thyroid disorder with nodules. Tr. 292. At the time of her

---

[2] Citations to "Tr." refer to the pages indicated in the official transcript of the administrative record, filed herein as ECF 7.

alleged onset date, she was 39 years old. Tr. 321. She has completed four or more years of college and has past relevant work experience as an accountant and administrative clerk. Tr. 27.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

3 – OPINION & ORDER

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of March 5, 2013. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "fibromyalgia, hypermobile Ehlers-Danlos syndrome, small fiber neuropathy, chronic positional headaches, obesity, neurocognitive disorder, and major depressive disorder." Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18–21. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently; can sit for six hours in an eight-hour day; can stand and/or walk for six hours in an eight-hour day; can push and/or pull as much as she can lift and/or carry; can frequently climb ramps and stairs; can never climb ladders or scaffolds; can frequently crouch; can occasionally crawl; must avoid concentrated exposure to hazards such as unprotected heights, moving mechanical parts, or operating a motor vehicle; must avoid concentrated exposure to airborne irritants such as dust, fumes, and gases; can work in an environment with moderate noise levels; can perform simple routine repetitive tasks and simple work related decisions; can have

superficial contact with the public such as passing people in the hallways but with no direct contact; and can tolerate few changes in the routine work setting, defined as having routine tasks and routine changes throughout the day working in the same environment from one day to the next.

Tr. 21. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 27. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "electronics worker, office helper, marker." Tr. 29. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

//

5 – OPINION & ORDER

**DISCUSSION**

Plaintiff argues that the ALJ erred in: (1) rejecting Plaintiff's subjective symptom testimony; (2) failing to adequately consider whether Plaintiff's migraines equal Listing 11.02; and (3) failing to include all supported limitations in the RFC.

**I.    Symptom Testimony**

Plaintiff contends the ALJ failed to provide legally sufficient reasons to reject her subjective symptom testimony concerning her migraines, pain, and memory impairment.³ Defendant responds that the ALJ reasonably relied on Plaintiff's conservative treatment, improvement with treatment, and the objective medical evidence.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if

---

³ Plaintiff concedes that the ALJ reasonably discounted her symptom testimony related to her mental health impairments, which included a discussion of her alleged memory problems. Tr. 25.

6 – OPINION & ORDER

the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted). When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); see also *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that she is "never without a headache" and experiences migraines five to six times a month. Tr. 111, 114–115. During these migraines she experiences extreme nausea, light and sound sensitivity, and cannot sleep. Tr. 116. Her migraines can cause her to go to the emergency room. Tr. 116. She testified that sometimes her migraines respond to rescue medications, sleep, or a hot shower. Tr. 114.

Plaintiff testified that she spends most of the day in bed and that it has been over two years since she has been able to take a brief walk. Tr. 112. She noted that her balance and headaches are affected by changes in elevation. *Id.* She lives with her parents, husband, and kids. Tr. 110. She does not do chores and relies on prepared foods or food prepared by her family members. Tr. 113, 124–125. She stated that she has been diagnosed with a "convergence

problem" which prevents her eyes from focusing and causes blurry vision and headaches. Tr. 120.

To discount Plaintiff's symptom allegations related to her migraines and pain the ALJ relied on conservative treatment, lack of objective evidence, and improvement with treatment. Tr. 23.

Conservative treatment and a lack of objective medical evidence were not clear and convincing reasons to reject Plaintiff's testimony. The ALJ wrote that after Plaintiff's brain surgery her "impairments were generally treated conservatively." Tr. 23. On the contrary, the record shows Plaintiff has tried several types of rescue and prophylactic prescription medications, a neurostimulator device, chiropractic treatment, physical therapy, and changes to her diet. Tr. 381, 403, 417, 760. Furthermore, there is no evidence in the record that Plaintiff declined an available alternative or more aggressive treatment for her migraines and pain.

Regarding the objective medical evidence, the ALJ gave two reasons related to Plaintiff's migraines and pain. First, he noted Plaintiff's "unremarkable presentation during appointments" despite alleging "constant chronic symptoms." Tr. 22–23. While she did not present with a headache or migraine at every visit, there are multiple visits where Plaintiff complained of a headache or multi-day severe migraine. Tr. 388, 393, 510, 1082. Next, the ALJ found that Plaintiff "generally had no evidence of muscle atrophy during the relevant period" noting without citation that "muscle atrophy is a common side effect of prolonged or chronic pain, as it is common to not use a muscle in order to avoid pain." Tr. 23. The ALJ did not cite any medical finding or opinion in the record that supports his statement that Plaintiff's reported level of activity would necessarily lead to widespread muscle atrophy. Accordingly, the Court has no reasonable method to determine whether this is a medically supportable conclusion given

Plaintiff's alleged activity and conditions. An unsupported expectation of generalized muscle atrophy was not a clear and convincing reason to discount Plaintiff's testimony. *See Rawa v. Colvin*, 672 F. App'x 664, 667 (9th Cir. 2016) (finding the same and noting that '[i]t is beyond the scope of the ALJ's authority to offer such a medical opinion based solely on his own personal speculation.") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975) (finding that an ALJ may not go outside the record to assess a Plaintiff's medical conditions).

Although the ALJ may have erred in citing Plaintiff's conservative treatment and lack of objective medical evidence in making his adverse credibility determination, any error was harmless, because Plaintiff's favorable response to treatment was a clear and convincing reason supported by the record for discounting Plaintiff's testimony. Improvement with treatment can be a clear and convincing reason to discount a Plaintiff's testimony. *See Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's testimony undermined by the fact he responded well to conservative treatment). Symptom improvement, however, should be considered within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

In 2016, Plaintiff was described by her doctor as "a woman with a mixed headache disorder including chronic migraine" and "seizure like episodes." Tr. 449. She experienced photophobia, phonophobia, nausea, vertigo and the need to go to her room and not come out. *Id.* She reported having migraines with these symptoms 8-10 times per month. *Id.* She experienced relief from rescue medications. *Id.* In 2017, despite being on prophylactic migraine medications

9 – OPINION & ORDER

she experienced a thirteen-day migraine and reported nausea, photophobia, and worsening with movement. Tr. 390–393. In 2018, Plaintiff continued to take multiple prophylactic medications but reported daily headaches with similar symptoms. Tr. 379–380. During this time period she reported intermittent and short-term relief from pain with prescription medications and chiropractic treatments. Tr. 449 (relief from rescue medications); Tr. 388 ("better after last [chiropractic] visit for about 3-4 days, headaches continue to be better compared to before treatment."); Tr. 403 ("responded well to today's [chiropractic] treatment and reported "feeling much better" following care"); Tr. 418 ("felt great following [chiropractic] treatment for 2.5 days"); Tr. 406 (Plaintiff "reported that she walked Portland to coast" but experienced back pain).

    In 2019, she saw a "50%" decrease in the severity of her headaches with the introduction of a new medication. Tr. 1013, 1038. She also began a series of regular physical therapy visits. Throughout these visit she showed "significant improvement" in her various physical symptoms, including her postural orthostatic tachycardia syndrome (POTS) directly associated with her headaches. Tr. 745–746, 759, 774, 781, 788, 796, 804, 810. During these visits she reported feeling better and noted considerable physical activities. *Id.* For example, at a visit in July 2019, her physical therapist noted that she had "been progressing her ability with her POTS limitations" and had "been able to increase her activity level while maintaining an acceptable HR with less adverse symptoms." Tr. 760. Plaintiff stated "I do not take as long to recover. I used to be in bed the whole next day. Now, I am able to be functional doing light work throughout the day" and "I was able to walk 3/4 mile up at Timberline elevation. I was able to keep my heart rate in the right range. I had to stop a few times but I did it." Tr. 759. At a visit in September 2019, Plaintiff reported that she had "been doing well with POTS symptoms" despite "working

everyday doing heavier work . . . moving racks and clothes," "doing 12,000-16,000 steps a day and working 16 hour days." Tr. 810.

These 2019 chart notes show significant improvement in Plaintiff's symptoms that are at odds with her hearing testimony. At the March 2020 hearing, she testified that she lays in bed all day and has not taken a brief walk in over two years. But throughout 2019, the record shows significant improvement in her condition after the introduction of a new medication and physical therapy leading to markedly increased physical activity. The ALJ directly cited these notes when discounting Plaintiff's testimony. Thus, improvement with treatment was a clear and convincing reason supported by substantial evidence to reject Plaintiff's testimony.

**II.     Listing 11.02**

Plaintiff argues the ALJ erred by failing to address her migraines under Listing 11.02. Defendant responds that the ALJ was not required to specifically identify Listing 11.02 when discussing whether Plaintiff's headaches met or equaled a listing. He argues in the alternative that any error was harmless because Plaintiff has not met her burden to show that her headaches meet Listing 11.02B.

In discussing the listed impairments and Plaintiff's headaches the ALJ noted the following:

> Headaches cannot meet a listing in Appendix 1 because it is not a listed impairment. At this step, therefore, it must be determined whether it medically equals a listing. However, the evidence fails to demonstrate that the claimant's headaches medically equal a listing.

Tr. 18.

If a claimant meets or medically equals a listed impairment at step three of the sequential analysis, then she is presumed disabled regardless of her age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence to

11 – OPINION & ORDER

establish all of the requisite medical findings that her impairments meet or equal any particular listing. An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). Finally, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir.1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.*

There is no medical listing for migraines or headaches. However, as Defendant concedes, Listing 11.02 is the appropriate listing for an equivalence analysis. SSR 19-4p instructs the ALJ on how to evaluate whether a claimant's migraines are equal in severity and duration to the criteria in Paragraph B of Listing 11.02. It states:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations). SSR 19-4p at 4.

12 – OPINION & ORDER

The ALJ provided no analysis of Listing 11.02B, despite finding that Plaintiff's "chronic positional headaches" constituted a severe impairment. The ALJ committed legal error by failing to discuss whether Plaintiff's headaches met or equaled Listing 11.02B after finding headaches were a severe impairment. *See Jones v. Comm'r of Soc. Sec.*, No. 1:19-CV-00109-REB, 2020 WL 7029143, at *5 (D. Idaho Nov. 30, 2020) (concluding that a finding that the plaintiff's migraines were a severe impairment "coupled with the SSA's . . . direction on analyzing migraine headaches vis à vis Listing 11.02, establishes that the ALJ erred in evaluating Petitioner's migraine headaches at step three of the sequential process by not considering Listing 11.02."); *Rader v. Comm'r of Soc. Sec.*, No. 2:17-CV-00131-CWD, 2018 WL 4087988, at *4 (D. Idaho Aug. 27, 2018) (same); *Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-CV-01373-HZ, 2017 WL 1927926, at *3 (D. Or. May 10, 2017) (same). The "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ's conclusory statement that "the evidence fails to demonstrate that the claimant's headaches medically equal a listing" is not sufficient. *See id.* ("A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."). This is especially so where the body of the ALJ's opinion lacks a robust discussion of Plaintiff's headaches.

Defendant contends that the ALJ's failure to make findings regarding Listing 11.02 was harmless because she has not met her burden of setting forth evidence that supports these findings. Plaintiff has presented plausible evidence of equivalency to listing 11.02. The record establishes that Plaintiff has a documented history of migraines with photophobia, phonophobia, and nausea and adherence to prescribed treatments. However, the frequency and severity of Plaintiff's migraines and attendant limitations are all based on her self-reports. As discussed

13 – OPINION & ORDER

above, the ALJ reasonably discounted her symptom testimony related to her migraines. Thus, the ALJ's failure to discuss Listing 11.02 was harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citations omitted) (an error is harmless if it is "inconsequential to the ALJ's ultimate nondisability determination" or if, despite any legal error, "the agency's path may reasonably be discerned").

**III.    RFC**

Plaintiff contends the ALJ erred by failing to include all supported limitations in her RFC. Once a claimant establishes a medically-determinable impairment that does not meet a "Listed" disorder at step three in the sequential proceedings, the ALJ must assess the claimant's RFC. 20 C.F.R. §§ 404.1520(e); 416.920(e). The RFC represents all of a claimant's work-related limitations, including non-severe limitations. 20 C.F.R. §§ 404.1545(a)(1–2); 416.945(a)(1–2). In making this assessment, the ALJ considers "all of the relevant medical and other evidence," as well as a claimant's testimony and lay testimony describing the claimant's limitations. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3).

Plaintiff contends the ALJ erred by failing to include the limiting effects of her headache disorder and history of brain surgery: nausea, photophobia, disabling pain, and transient paralysis on her right side. Again, as discussed above, these symptoms are based on Plaintiff's self-reports. Because the ALJ permissibly rejected Plaintiff's symptom testimony, it was not error to fail to include these alleged limitations in the RFC.

Plaintiff also argues the ALJ erred by failing to include the limiting effects of her convergence insufficiency. Defendant did not respond to this argument in his brief. At the hearing, when asked about her "convergence problem," Plaintiff testified that she "can't read"

and "can't really do anything close up." Tr. 118. She stated that she gets "blurry vision, which increased headaches, which increases stress." *Id.*

Though the ALJ reasonably discounted Plaintiff's symptom testimony about her migraines, he did not discuss her alleged limitations related to convergence insufficiency. *See See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993) (finding that a general assertion that a claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible."). The ALJ's only discussion of Plaintiff's convergence insufficiency was based on the objective medical evidence, which standing alone is not enough to discount her testimony about the alleged limitations. Tr. 23 ("The claimant's eye examination showed some convergence insufficiency but otherwise showed normal motility and alignment"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). And here, Plaintiff has produced objective medial evidence of the underlying impairment. In November 2018, in a "comprehensive ophthalmology progress note" Plaintiff was diagnosed with "convergence insufficiency with otherwise normal motility and alignment" after an eye exam. Tr. 1163 In December 2018 at a follow-up eye exam, she was noted to have "convergency insufficiency." Tr. 1141.

The ALJ did not discount these ophthalmologists' opinions. And, as noted, he did not permissibly discount Plaintiff's symptom testimony related to her convergence insufficiency.

Though the ALJ wrote that Plaintiff had convergence insufficiency with "normal motility and alignment," the medical significance of this finding is not established in the record. Accordingly, the ALJ failed to properly consider Plaintiff's alleged limitations related to her convergence insufficiency when proceeding through the steps of the sequential evaluation.

In light of this error a remand for further proceedings is necessary. Plaintiff does not ask for a remand for benefits, and the Court finds that "ordinary remand rule" applies in this case. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). The severity of Plaintiff's convergence insufficiency and the expected limitations are not immediately apparent from the record. Plaintiff testified that she "can't read" or do things "up close" but also testified to doing "puzzles" on her ipad in bed. Tr. 112–113. Thus, the record is not "free of conflicts, ambiguities, or gaps." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017). The Court exercises its discretion and remands this case for further proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED:___June 6, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge